# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 12-415V
### (TO BE PUBLISHED)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| MATTHEW MORRIS, | \* | |
| | \* | Special Master Corcoran |
| Petitioner, | \* | |
| | \* | Dated: June 4, 2014 |
| v. | \* | |
| | \* | Vaccine Act; Interim Fees and Costs; |
| SECRETARY OF HEALTH AND | \* | Withdrawal of Counsel; Deferral of |
| HUMAN SERVICES, | \* | Decision Pending Completion of |
| | \* | Entitlement Phase |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Ronald C. Homer, Boston, MA, for Petitioner

Alexis Babcock, Washington, DC, for Respondent

## ORDER DEFERRING DECISION ON
## INTERIM FEES AND COSTS APPLICATION[1]

**Corcoran,** *Special Master.*

    In this case under the National Vaccine Injury Compensation Program (hereinafter "the Vaccine Program"), Matthew Morris ("Petitioner") seeks, pursuant to 42 U.S.C. § 300aa-15(e) (2006), an interim award for attorneys' fees and costs incurred in the course of Petitioner's attempt to obtain Program compensation. After careful consideration, and for the reasons set forth below, I am deferring ruling on the application. Although Respondent's articulated objections to the interim fee request are not persuasive, an award of interim fees and costs is not

---

[1] Because this order contains a reasoned explanation for my action in this case, it will be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published order's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the order will be available to the public. *Id.*

justified at this time. However, because such justification could be substantiated as the case proceeds, I will consider the application again at the conclusion of the entitlement phase of the case.

## BACKGROUND

*Petitioner's Allegations of Injury*

On June 26, 2012, Mr. Morris filed a petition under the Vaccine Program alleging that he had developed myalgias and paresthesias from a Tetanus-diphtheria-acellular-pertussis ("Tdap") vaccine he received on August 29, 2009. (Pet. at 2; Pet'r's Ex. 2 at 3).

Mr. Morris has filed various documents and medical records to support his claim. (Pet'r's Exhibits 1-10). As the affidavit he filed in connection with his petition states, Mr. Morris received the Tdap vaccine after puncturing his finger on rusty barbed wire. (Pet'r's Ex. 7 at ¶ 3; Pet'r's Exhibit 2 at 1). At the time, Mr. Morris resided in rural Oregon and was without income or health insurance. (Pet'r's Ex. 7 at ¶ 2). On September 5, 2009, Mr. Morris asserts that he began to experience debilitating flu-like symptoms, accompanied with aches, pains, and fever, that made it difficult for him to participate in his normal activities. (*Id.* at ¶¶ 5-6).

By the beginning of October of that year, Mr. Morris states that these flu-like symptoms intensified greatly. (Pet'r's Ex. 7 at ¶ 7). He began to experience numbness in his hands and shooting bilateral pains in his arms and legs, all of which caused him great fatigue. (*Id.* at ¶¶9 and 11-14). Although he claims to have continued to experience these symptoms from the fall of 2009 until the spring of 2010, Mr. Morris asserts that his financial situation, lack of insurance, and a harsh, snowy winter (which limited his ability to travel given his rural home) collectively led him to postpone seeking medical attention for his alleged illness. (*Id.* at ¶¶10 and 12).

The medical records filed in this action confirm that Mr. Morris received the Tdap vaccine on the date alleged. (Pet'r's Exhibit 2 at 3). In May 2010, Mr. Morris first visited his family physician, Dr. Paul Johnson, for removal of a skin lesion on his hip and mentioned that he was experiencing ongoing pain (which he characterized as "bone pain") throughout his body that he associated with his Tdap vaccination. (Pet'r's Exhibit 1 at 4). Later, at a June 2010 follow-up visit with Dr. Johnson, Mr. Morris again complained of the same significant pain throughout his body, although most notably in his left arm, asserting that anti-inflammatory drugs were not reducing the pain and that it remained his belief that the Tdap vaccine was the source of his illness. (*Id*. at 2).

In July 2010, Mr. Morris visited Ron Rosen, M.D., P.C., who diagnosed him with myalgias and paresthesias. (Pet'r's Exhibit 4 at 1). Dr. Rosen recommended a follow up if Mr. Morris's condition did not improve within three weeks. (*Id.* at 3). Daniel Evan Fohrman, M.D., a rheumatologist, subsequently evaluated Mr. Morris for musculoskeletal pain in September 2010. (Pet'r's Exhibit 3 at 1). Dr. Fohrman diagnosed Mr. Morris with musculoskeletal pain of unknown etiology and recommended a trial of prednisone. (*Id*. at 4). By November 2010, however, Mr. Morris was still complaining of myalgias and joint pain, asserting that the steroid

trial had not improved his condition. (Pet'r's Exhibit 1 at 1). At his next follow-up doctor's visit in May 2011, Mr. Morris once again reported chronic pain. (Pet'r's Exhibit 9 at 1). Mr. Morris's June 21, 2012 affidavit asserts that (as of that date) the pain he has experienced since receiving the Tdap vaccination has not ceased and responds only minimally to prescription pain medication. (Pet'r's Ex. 7 at ¶¶18-20). As a result, he alleges that he cannot work or live the life of a functioning independent adult, requiring him to rely on the financial support of family members for medical costs and other basic needs. (*Id.* at ¶ 20).

*Procedural History*

The records setting forth the treatment history summarized above were filed between July and mid-September of 2012. Mr. Morris thereafter filed a Statement of Completion on September 25, 2012. (ECF No. 12). The Secretary of Health and Human Services ("Respondent") subsequently opposed Mr. Morris's claim, arguing that he could not meet the burden of proof necessary to obtain a Program award. (*See* November 9, 2012 Rule 4(c) Report ("Report") (ECF No. 13)). In particular, Respondent asserted that the medical records revealed merely that Mr. Morris had reported to his physicians his belief that the Tdap vaccine was related to his illnesses – not that any of the physicians had themselves opined as such. (Report at 8). Respondent also noted that Petitioner had yet to proffer any sort of reliable medical or scientific explanation for the causal relationship between Mr. Morris's vaccination and his purported illness. (*Id.* at 8-9).

Following the filing of the Statement of Completion, Mr. Morris's counsel represented him in three telephone status conferences held in this matter on August 21, 2012; January 22, 2013; and August 13, 2013. His counsel also prepared numerous status reports in the case, submitting them on April 9, 2013; July 31, 2013; September 20, 2013; November 4, 2013; January 3, 2014; and March 3, 2014. (ECF Nos. 16, 18, 22, 24, 25, 31).

As reflected in Petitioner's April and July 2013 status reports, for a period of time the parties tried to informally resolve the matter. (ECF No. 16; ECF No. 18). But such settlement talks reached an impasse, and Mr. Morris and his counsel spent some time exploring next steps in the matter. (ECF No. 22; ECF No. 24). Mr. Morris's January and March 2014 status reports, however, stated that counsel would no longer be representing Mr. Morris in his entitlement claim, although Petitioner intended to proceed and was searching for new counsel. (ECF No. 25 at ¶2; ECF No. 31 at ¶2). On May 1, 2014, Petitioner's counsel participated in a status conference during which I ordered counsel to file a motion to withdraw, which was done on May 15, 2014.

On February 11, 2014, Petitioner filed the present application for interim fees and costs, seeking $16,915.50 in interim fees and $688.60 in interim costs for a total of $17,604.10 (the "Fee App."). Respondent opposed the application on February 20, 2014 (the "Fee App. Opp."), arguing that an award of interim fees is not appropriate at this stage because the Petitioner has failed to demonstrate undue hardship as required by *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). Petitioner filed a reply on February 28, 2014, arguing that interim fees are appropriate in this case (the "Reply"). The matter is now ripe for resolution.

**ANALYSIS**

I.    Legal Standards Governing Interim Awards of Attorneys' Fees

Special masters are required to award reasonable attorneys' fees and litigation costs for Vaccine Act claims which successfully demonstrate a petitioner's entitlement to compensation. *See* § 300aa-15(e)(1). But special masters may also, at their discretion, award attorneys' fees and litigation costs to unsuccessful litigants as long as the petition was (a) filed in good faith and (b) with a reasonable basis. *Id.* Whether a petitioner was successful or not, special masters have the discretion to determine what constitutes a reasonable amount for fees and costs. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1377 (Fed. Cir. 2010); *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *Friedman v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 323, 332 (Fed. Cl. 2010); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 31 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994); *Saunders v. Sec'y of Health & Human Servs.*, 90-826V, 1992 WL 700268, at *1 (Cl. Ct. Spec. Mstr. May 26, 1992) *aff'd*, 26 Cl. Ct. 1221 (1992), *aff'd*, 25 F.3d 1031 (Fed. Cir. 1994).

Ultimately, it is the Petitioner's burden to demonstrate that requested attorneys' fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 215 (2009); *Rupert v. Sec'y of Health & Human Servs.*, 52 Fed. Cl. 684, 686 (2002); *Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The same burden applies to justifying requests for an award of costs. *Perreira*, 27 Fed. Cl. at 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Although Respondent takes pains to reiterate her statutory objection to the awarding of interim fees, controlling decisions of the Federal Circuit[2] clearly permit the recovery of interim fees and costs in Vaccine Act cases. *Avera*, 515 F.3d at 1352; *Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *McKellar v. Sec'y of Health and Human Servs.*, 101 Fed. Cl. 297, 302 (2011) ("interim fees are permitted even before an entitlement decision is made"). The *Avera* court followed the Supreme Court's construction of other fee-shifting statutes, which also allow the award of interim fees in appropriate circumstances. *Avera*, 515 F.3d at 1351-52. In fact, the *Avera* court determined that the justification for an award of interim fees is *greater* in Vaccine Act cases, because the Act does not have a "prevailing party" requirement (and thus petitioners can obtain fee awards even where they do not prevail on their claim), and because the underlying purposes of the Vaccine Act are better served if petitioners have access to competent legal representation – a goal that is aided if attorneys appearing for Vaccine Court petitioners have assurances that their fees will be satisfied. *Id.* at 1352; *see also* H.R. Rep. No. 99-908 at 22 (1986).

---

[2] In this decision, I reference or rely upon both the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit decisions are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

*Avera*, however, did not define the circumstances in which an interim award might appropriately be issued – leading other special masters to observe that the standards for granting an interim fee award "remain somewhat muddled." *Small v. Sec'y of Health & Human Servs.*, No. 02-1616V, 2014 WL 308297, at *1 (Fed. Cl. Spec. Mstr. Jan. 7, 2014), *citing Shaw*, 609 F.3d at 1375. Thus, although the *Avera* court identified certain conditions under which an interim fee award may be appropriate, such as "where proceedings are protracted and costly experts must be retained," (*Id.* at 1352), the case has been interpreted as allowing special masters broad discretion in awarding interim fees. *See, e.g., Kirk v. Sec'y of Health & Human Servs.*, No. 08-241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading *Avera* to set a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim"); *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (*Avera* provides only "**examples** and **general guidance** concerning when interim fees and costs might be awarded, leaving the special masters broad **discretion** to consider many factor in considering whether an interim award is appropriate in a particular case" (emphasis in the original)).

Since *Avera*, there has been a considerable amount of case law discussing when interim fee awards are appropriate. In some cases, interim awards have been granted after taking into account the amount of time that has passed in the case as well as the amount of work performed. *See, e.g., Franklin v. Sec'y of Health & Human Servs.*, No. 99-0855V, 2009 WL 2524492, at *4 (Fed. Cl. Spec. Mstr. July 28, 2009) (awarding interim fees where the petition had been pending for years, petitioner's counsel had paid significant amounts to experts, and the final resolution of the case was likely to take some time); *MacNeir v. Sec'y of Health & Human Servs.*, No. 03-1914V, 2010 WL 891145, at *1-4 (Fed. Cl. Spec. Mstr. Feb. 12, 2010) (granting an interim award of fees and costs of $12,062 when counsel had expended most of the costs and fees while obtaining and filing medical records). But there is no defined period of time that must have passed from the time a petition was filed to justify an interim fee award. *See, e.g., Bear*, 2013 WL 691963 at *4-5 (interim fee award allowed when petition had been pending for only nineteen months); *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (interim fee award granted with respect to case pending for less than one year).

II.   <u>Appropriateness of Interim Fee Award in this Case Generally</u>

Respondent's argument that Mr. Morris's interim fee award request should be denied relies on limiting the scope of *Avera* and the subsequent cases relying on it. If Respondent were correct, it would be appropriate to award interim fees only where the case at issue involved protracted proceedings and the retention of costly experts, or where the petitioner had suffered some other comparable undue hardship. (Fee App. Opp. at 2-4). Respondent posits that here, Mr. Morris has failed to establish that he has faced sufficient undue hardship and thus should not receive an interim fee award. (*Id.* at 3).

Based on the legal authority mentioned above, however, I do not find Respondent's argument to be persuasive, since *Avera* is not properly limited in scope in the manner urged by Respondent. Rather, the resolution of Mr. Morris's interim fee request turns initially on whether

an attorney's withdrawal from representing a petitioner prior to the time the petitioner's underlying claim has been resolved presents appropriate circumstances for the award of interim fees. I find, consistent with the decisions of other special masters and judges of the Court of Federal Claims, that it can.

Many instructive cases provide guidance for these particular circumstances. In *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), for example, a special master's decision to grant petitioner an interim fee award despite counsel's withdrawal was upheld. Petitioner's counsel in *Woods* had withdrawn from the action after representing her for about sixteen months. Respondent argued that such circumstances were not sufficiently "extenuating" (along the lines of the circumstances in *Avera*), but the Court rejected that reasoning, observing that, as the record reflected, prior to withdrawal counsel had "vigorously pursued" petitioner's claim. *Woods*, 105 Fed. Cl. at 154. It would thus be unjust "to force counsel, who have ended their representation, to delay receiving fees indefinitely until the matter is ultimately resolved." *Id.; see also Terrell v. Sec'y of Health & Human Servs.*, No. 13-334V, 2013 WL 4828593, at *2 (Fed. Cl. Spec. Aug. 20, 2013) ("[a]s in *Woods*, it is a hardship for petitioner to have her former counsel not be paid for her representation for a period of time after she no longer represents petitioner").[3]

In granting interim fee requests for withdrawing counsel, other special masters have expressed similar concerns about fairness to counsel. *See, e.g., Bear*, 2013 WL 691963 at *4-5 (the fact that counsel is withdrawing from representation does not in itself justify an interim award, but is a persuasive factor to be entered into the analysis) ; *Edmonds v. Sec'y of Health & Human Servs.*, No. 04-87V, 2012 WL 1229149 (Fed. Cl. Spec. Mstr. March 22, 2012) (requiring counsel who have withdrawn from representation to wait until the conclusion of a case to receive fees would create a hardship that would in the future discourage counsel from representing petitioners in the Vaccine Program).

Accordingly, I do not find that Respondent's specific objections to an interim fee award in this case are, by themselves, persuasive grounds for denying Mr. Morris's application.

III.     The Other Criteria for an Attorneys' Fee Award are not Satisfied at This Time

Despite my determination that the general circumstances in which Mr. Morris's fee application arises are not grounds for denying an interim fee award, that does not end the analysis. Requests for interim awards must satisfy the same good faith and reasonable basis requirements applicable to the fee requests of unsuccessful petitioners. *Avera*, 515 F.3d at 1352;

---

[3] Other Court of Federal Claims decisions have seemingly reached the contrary conclusion. *See, e.g., McKellar*, 101 Fed. Cl. at 302 ("the mere fact that an attorney plans to withdraw is not necessarily a hardship that triggers an award of interim attorneys' fees and costs"). But the *McKellar* court's use of the self-limiting phrase "not necessarily" underscores that this decision recognizes that an attorney's withdrawal can, in appropriate circumstances, be an occasion for an interim fee award. The fee request that the *McKellar* court addressed, moreover, was based on circumstances not merely involving "a routine withdrawal and substitution of counsel," but instead occurred in the context of a petition that the presiding special master had characterized as weak and unlikely to be one upon which the petitioner would prevail.

*Shaw*, 609 F.3d at 1375; *Franklin*, 2009 WL 2524492, at *4. I thus cannot make an interim fee award unless I also find that Mr. Morris has established that his claim meets these additional criteria.[4] I find that only one of them is satisfied at this time.

A.      *The Petitioner Has Established His Good Faith*

As discussed in *Lamar v. Sec'y of Health & Human Servs.*, No. 99-584V, 2008 WL 3845157 (Fed. Cl. Spec. Mstr. July 30, 2008), a determination of good faith can be made at the start of the case, and is the more easily established of the two factors. *See also Austin v. Sec'y of Health & Human Servs.*, No. 10-0362V, 2013 WL 659574, at *7 n.20 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("[d]ue to its subjective nature, the standard for good faith is very low").[5] Analyzing good faith "requires a special master to delve into the circumstances surrounding the filing of the petition, rather than rely on its content." *Lamar*, 2008 WL 3845157 at *3. Thus, good faith has been found even when petitioner's counsel did not file the petition with any medical records, given evidence that the petitioner honestly believed that he had suffered a vaccine related injury and thus had a viable claim. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030 at *5-6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

In this case, Petitioner has satisfied the good faith requirement. Mr. Morris's petition identifies a possible temporal relationship between his condition and the vaccination in question, incorporating specific citations from both his affidavit and his medical treatment history to give flesh to his allegations. (ECF 1). His affidavit and medical records evince his genuine belief that his injury was caused by the Tdap vaccine. (Pet'r's Exhibit 1 at 4; Pet'r's Exhibit 4 at 3; Pet'r's Exhibit 7). His medical records confirm his receipt of the vaccine in question (Pet'r's Exhibit 2) and memorialize numerous follow up appointments with the Petitioner's family doctor plus a specialist at which he consistently complained of his injuries and expressed his concern that their source was the vaccination he had received months earlier. (Pet'r's Exhibits 1-4). Because there is no contrary evidence of misrepresentation by the Petitioner, I conclude that the Petitioner has fulfilled the good faith requirement.

B.      *The Petitioner Has Not Established Reasonable Basis at this Time*

Based on the present record, I cannot find at this time that there exists a reasonable basis for Mr. Morris's claim. The inquiry into reasonable basis is an objective test that can be satisfied by providing or pointing to evidence of a relationship between the vaccination and the alleged injury, taking into account the overall circumstances relevant to a given petitioner's claim.[6]

---

[4] In opposing Petitioner's interim fee application, Respondent for her part does not dispute either Petitioner's good faith or the reasonable basis of the claim. Fee App. Opp. at 4 n.2. That fact, however, does not deprive me of the general discretion to evaluate the appropriateness of a fee award request. *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 218 (2008) (special master did not abuse her discretion in reducing portion of fee application not otherwise objected to by Respondent).

[5] Indeed, in some cases it has been asserted that good faith can be presumed. *See, e.g., Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

[6] There is no explicit instruction from the Federal Circuit as to the precise nature of the evidentiary burden imposed on a petitioner attempting to establish reasonable basis. Other special masters have considered whether a claim has support in the contemporaneous medical records, a medical opinion, or if the petitioner can demonstrate at least that

*Franklin*, 2009 WL 2524492 at *4; *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981 at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). The reasonable basis test does not evaluate the likelihood of the claim's ultimate success in establishing causation, but rather weighs the feasibility of the claim. *Id.*; *see also Turner*, 2007 WL 4410030 at *6 ("[C]ounsel may file a claim on grounds that are reasonable but ultimately are determined not to merit Program compensation.").

Although in the history of the Vaccine Program special masters have tended to be "quite generous in finding a reasonable basis" when granting fee awards to unsuccessful petitioners, that generosity wanes where it is evident that counsel failed to investigate sufficiently the facts underlying a claim. *Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *3 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citation omitted); s*ee also Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993) (affirming denial of attorneys' fees where contemporaneous records provided no basis for alleged injury), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995); *Di Roma*, 1993 WL 496981 at *3 (denying attorneys' fees and costs where "[m]inimal research and good sense should have indicated that th[e] case had no basis under the law"). Thus, proof of an adequate investigation into a claim's viability helps to persuasively establish reasonable basis.

The record in this case does contain some proof in support of the claim's reasonable basis. Mr. Morris received a Tdap vaccination (Pet'r's Exhibits 1-10; Pet'r's Exhibit 2 at 3), and thereafter did suffer *some* kind of illness, seeking medical help frequently (even if he waited months to begin doing so). (Pet. Exhibit 1-4). However, a petition cannot be based simply on a petitioner's individual claims (*see* § 300aa–13(a)), and/or a mere temporal association between vaccination and illness (*Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed.Cir.1992)). And overall, the existing record suggests that proving causation in this case may be very difficult.[7]

For example, Mr. Morris has not yet offered a theory that would explain how the Tdap vaccine could cause the sort of illness and related symptoms he alleges to have experienced. There are also issues in pinpointing the precise onset of Mr. Morris's illness. At present, Mr. Morris' medical records reflect an eight-month gap between the time of his vaccination and when he first sought medical assistance. But to explain this gap, Mr. Morris relies wholly on his own affidavit instead of the contemporaneous notes of a treating physician, an expert opinion, or other medical literature. (Pet'r's Ex. 7 at ¶¶ 7, 9, and 11-14). Furthermore, while the treating

---

"fundamental inquiries" were made to locate evidentiary support for the claim. *Melbourne v. Sec'y of Health & Human Servs.*, No. 99-694V, 2007 WL 2020084, at *6 (Fed. Cl. Spec. Mstr. June 25, 2007) (petitioner cannot obtain fee award once reasonable basis ceases to exist, based upon counsel's awareness that the medical record or expert opinion fails to support the claim); *Di Roma*, 1993 WL 496981 at *2.

[7] Mr. Morris has not alleged a Table injury in this case, and so I must consider the requirements needed to prove an off-table injury. A petitioner alleging such a claim must satisfy (by a preponderance of the evidence) the three prongs set forth by the Federal Circuit in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005): (1) a medical theory causally connecting the vaccination to the injury (*i.e.*, that the vaccine "can cause" the injury); (2) a logical sequence of cause and effect showing the vaccination was the reason for the injury (*i.e.*, that in this case the vaccine "did cause" the injury); and (3) a proximate temporal relationship between the vaccination and the injury. *Althen*, 418 F.3d at 1279.

physicians' notes confirm that Mr. Morris informed them that he believed the Tdap vaccine had caused his illness, none of the doctors who saw him seem to have reached that conclusion independently, and otherwise they disagree as to the proper diagnosis for his illness.

The testimony of an appropriate expert on such matters will thus be very important to the ultimate success of Mr. Morris's petition – but as of yet, it does not appear that such an expert has been consulted let alone retained. It is certainly true that the prior retention of an expert and subsequent filing of their opinion is not a prerequisite to a successful interim fee application. *Austin v. Sec'y of Health and Human Servs.*, No. 10-362V, 2012 WL 592891, at *5 (Fed. Cl. Spec. Mstr. Jan. 24, 2012) ("[n]ot every case requires an expert opinion to demonstrate a reasonable basis for awarding fees and costs"); *Riley*, 2011 WL 2036976, at *3 ("[t]he submission of an expert report by itself does not establish a reasonable basis for the claim"). But in this case, such expert evidence (or at least persuasive medical literature) is likely necessary to remedy potentially significant weaknesses in Petitioner's claim that are so evident now that reasonable basis is properly called into question.

My concerns about the reasonable basis for Mr. Morris's claim are amplified by my review of the billing records submitted in support of Petitioner's interim fee request. Although the case was filed in June of 2012, the billing records reveal that Petitioner's counsel first started work on the matter almost two years before, in July of 2010 - approximately one year after Petitioner received his vaccination. (Fee App., Tab A, at 4). This was therefore not a case where a looming limitations deadline forced counsel to file before completing an adequate prefiling investigation. *Compare Hearrell v. Sec'y of Health & Human Servs.*, No. 90–1320V, 1993 WL 129645, at *1 (Fed. Cl. Spec. Mstr. Apr. 6, 1993) (acknowledging that time constraints may affect the prefiling investigation made by counsel and reasonableness of filing a petition without any supporting documentation). Counsel's subsequent work on the case as reflected in the billing records show numerous calls with Mr. Morris, efforts to collect relevant medical records, and attorney review of the same. (*Id.* at 7-12). However, not until September 2013 are there any billing entries indicating even initial attempts by counsel to identify an expert. (*Id.* at 11). By January of this year, Petitioner's counsel was reporting to this tribunal their intent to withdraw from the case entirely, signaling an abandonment of such efforts.

In light of the above, and given the familiarity of Mr. Morris's counsel with the Vaccine Program and the proof necessary to support a successful petition therein, there are good reasons to question the adequacy of the investigation into the merits of Petitioner's claim - and therefore grounds for finding that reasonable basis for filing the case (or at least for maintaining it for as long as it went on) is lacking.

Despite such misgivings, however, I opt not to deny the fee application at this time but instead to defer ruling on it until resolution of the entitlement portion of Mr. Morris's claim. Other special masters have adopted such an approach when faced with an interim fee award in an unresolved case. *See, e.g., Austin*, 2012 WL 592891, at *6 (deferring ruling on interim fees and costs petition until completion of entitlement phase of case).

Reasonable basis can change during the course of a proceeding, such that a claim that has sufficient reasonable basis at the time of filing can "lose" that status if evidence later comes to

light undermining the claim. *See, e.g.*, *Perreira*, 33 F.3d at 1377 ("when the reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith"). The alternative is equally possible – a petitioner could identify evidentiary support for his claim that would rectify what first appeared to be a significant deficiency. If so, a final decision on entitlement, even if not favorable to Mr. Morris, might well resolve my concerns about reasonable basis to such an extent that would permit me to grant the present fee application.

## CONCLUSION

For the reasons stated above, I defer ruling on Petitioner's interim fees and costs application at this time. I will revisit the existing application, and whether existing counsel are entitled to the fees and costs requested in the Fee Application, at the conclusion of the entitlement phase of the case.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master